All right, back in session. And I have a second opportunity to mispronounce the name of the case, which is Sefcovic v. TEP Rocky Mountain et al. And the first of the two cases that we will hear is docket 19-1121. Counsel, when you're ready. May it please the court, my name is David Seeley and I represent the appellant intervenors Ivo, Sidney and Ruth Lindauer and Diamond Minerals LLC in this appeal concerning subject matter jurisdiction. We are here today before this court because this case, which ostensibly seeks to uphold and enforce the state court Lindauer settlement, number one, actually contravenes and interferes with the Garfield County District Court's judgment retaining to itself exclusive continuing jurisdiction over that settlement. Number two, it also involves matters that are ancillary to the still pending Lindauer case, rendering this case unremovable under the law. And number three, it also contravenes the Lindauer party's agreement selecting the continuing exclusive jurisdiction of the state court as their forum. Don't we have jurisdiction under the Class Action Fairness Act? Subject matter jurisdiction? Your Honor, there is colorable jurisdiction under the Class Action Fairness Act. Colorable? We have jurisdiction under CAFCA. The case could be brought under CAFCA, there's no doubt about that. What happens though- Can the state court or the parties limit a federal court's jurisdiction, either by agreement or state court order? Your Honor, in this case, the parties had an opportunity to remove the Lindauer case from the state court back in 2006 when it was filed. They chose not to do that. CAFCA doesn't- You didn't answer, that's not responsive. I'm sorry, Your Honor. Go ahead. Your Honor, I think the shorter answer is that CAFCA does not create any new jurisdiction, it merely expands jurisdiction and does not change- No, it creates concurrent jurisdiction. We have concurrent jurisdiction and there's nothing you can do to negate jurisdiction that we have been given by Congress. You've got to deal with some- There's got to be some basis for district court to defer. I understand what your argument is, which is that there was state court exclusive jurisdiction, but that exclusive jurisdiction, no matter whether it was or wasn't exclusive, doesn't take away the concurrent jurisdiction that the federal court had. So you've got to deal with that. Yes, Your Honor. And since it's apparent, two of us agree with that, you should deal with that. I will, Your Honor. I think it's important to keep in mind that CAFCA merely expanded diversity jurisdiction and it did not change the rules that limit federal jurisdiction that existed before CAFCA was enacted. What- We have subject matter jurisdiction. To the extent that you are making arguments, you are not making a subject matter jurisdiction argument. You're making an abstention argument. And the whole briefing here is just wrong. We have subject matter jurisdiction. A state is Congress. Parties can't agree to expand or limit our jurisdiction and neither can a state court. So I suggest you focus on something other than telling us that we don't have subject matter jurisdiction. Yes, Your Honor. Thank you. It is our position that CAFCA does not change the existing body of law regarding the exclusive jurisdiction, the treatment of exclusive jurisdiction of other courts. It does not change the body of law regarding the non-removability of cases where ancillary proceedings to a state court proceeding- Well, let's talk about ancillary then. First of all, that's a removal issue and we don't call it removal jurisdiction anymore, but that's a removal issue that arguably would have been waived because you're not making it until now. But assuming we can reach the merits of it, you suggest that this was ancillary and yet it's a different case. We have a subclass of plaintiffs here filing a separate case. I struggle with your removal arguments assuming we could reach them. Yes, Your Honor. Which we can't because you didn't bring it within a year of removal. You're arguing that- I'm not seeking to remove, Your Honor. You're challenging the removal. You're challenging removal. When can you do that? Can you wait until the case has been decided to challenge removal? Well, I certainly can't wait until I'm in the case and have an opportunity to intervene. The case law says that that happens after a class is certified and notice is given to the class because this is a putative class action. The enforcement of the Lindauer settlement here is clearly ancillary to the Lindauer case. Under federal law, the Kekonen case- It's a contract action, isn't it, on a settlement agreement? It's more than that, Your Honor, because in this case, the settlement was embodied in the judgment of the state court. And I would suggest to you, Your Honor, that the issue of honoring and upholding the exclusive jurisdiction of the state court in this case is more of a question of full faith and credit, of acknowledging- It's comedy. The district court talked about comedy, so let's talk about comedy. I don't disagree with you that if there was exclusive jurisdiction or even if there wasn't, that that would certainly be a factor, that state court reservation of jurisdiction for the federal court to consider. But the problem you have is it did consider that factor here. And I understand that it changed its mind after it first decided that that was the overwhelming issue. But eventually, it did find, it rejected your argument based on comedy principles, and it considered- It actually decided that the state court had exclusive jurisdiction. So assuming that it does, and I understand there's a question, why- Tell us why the district court erred under comedy. It erred under comedy because it did not respect the ancillary nature of the Sokovich lawsuit. Even though it was a subset of the Lindauer case, it was still an action to enforce the settlement agreement that was embodied in the judgment of the Garfield County District Court, which had retained exclusive jurisdiction to itself. Well, there's a lot to unpack there. Again, if we disagree with you, and we think this is not an ancillary action, but instead is a separate action on a separate settlement agreement, then does your- Do you have a response to that? Well, first of all, Your Honor, this was an action brought to enforce the Lindauer settlement agreement over which the District Court of Garfield County exercised, under Colorado law, exclusive jurisdiction and retained continuing exclusive jurisdiction to enforce and uphold that settlement. TEP invoked that same exclusive jurisdiction when it had a dispute with a class member, Union Pacific Railroad, and that dispute was filed in Garfield County, and TEP specifically requested and insisted that it be assigned to Judge Lynch, who was the judge who presided in the ongoing Lindauer litigation, so that she could interpret the release in that case. And that dispute was decided in early 2017. That matter was concluded right before this lawsuit was filed. So the Lindauer case is an ongoing case. Essentially, we had a settlement that was a consent decree that bound the parties to the court, bound the court to exercise supervision and continuing jurisdiction over the case, reflected in the judgment, and the court expressly retained continuing exclusive jurisdiction. So it's not just a contract. It's not just any settlement. This is a class action settlement that must be approved by the court, that is embodied in the judgment of the District Court of Garfield County. And I believe that under the cases, the District Court and this court are bound to honor that exclusive jurisdiction that has been exercised and continues to be exercised by the District Court of Garfield County. And the fact that... So the underlying point that you're making is that a state court can restrict the subject matter jurisdiction of a federal court that has concurrent jurisdiction granted by Congress. No, Your Honor, because this court does not have concurrent jurisdiction over the Lindauer case. The Lindauer case was filed... And the reason we don't is because, in your view, the state court took to itself exclusive jurisdiction. No, Your Honor, there are two parts to it. One is that when that case was filed, TEP did not remove it. They agreed to, they consented to, they acceded to the jurisdiction of the Garfield County District Court in the Lindauer case. Then... In the prior case. In the Lindauer case, yes, Your Honor, which is ongoing, which is still on file, in which the court stated in its judgment that it was retaining exclusive continuing jurisdiction. So for all these reasons, we feel that it is clear that there is an ancillary jurisdiction of the state court over this dispute, not... Okay, ancillary jurisdiction refers to when a federal court exercises jurisdiction over state claims because it has federal jurisdiction and it exercises ancillary jurisdiction to pick up the state claims. Ancillary jurisdiction doesn't make any sense in the context of this argument. With respect, Your Honor, I think under the Metzger v. UNUM life insurance case, this is unclear that retained jurisdiction to enforce a judgment is ancillary to the case in which the judgment was entered. That means that the enforcement of the Lindauer settlement agreement is ancillary to the Lindauer case, whether you file it as a separate case or not. It is still ancillary because it involves the enforcement of that settlement as to which the court, in a case where this court had no jurisdiction, reserved to itself the exclusive jurisdiction to enforce that settlement. I think your problem, again, is actually going back to the removal, and you don't think that this should have ever been removed. That is correct. The problem is, it did get removed, and we do have jurisdiction, and we do have subject matter jurisdiction. My question earlier was directed to whether you can even challenge that removal at this point, when we've exercised removal and we have, you know, this case has been ongoing for whatever period of time, a year and a half, before... Admittedly, this case is in an interesting posture because it is a class action, and my clients did not receive notice of the class certification, which was only incidental to the presentment of the settlement as a fait accompli. And in that connection, what were they supposed to do, preemptively intervene as soon as another case is filed? Well, they were aware of it. They were aware of it certainly long before that they sought to intervene. At least some months before one of the lawyers was aware. Right, and so they certainly could have acted quickly, and presumably, you know, at that point, made the same arguments they eventually made. And for whatever reason, they chose to wait until the very end of the litigation, when there's a settlement, there's a settlement done. And that's when they're making their arguments. It wasn't until then, Your Honor, that the interests of the class members, such as the Lindauers, were impacted. They certainly could have made an argument much, much earlier. This very argument, which is, oh, by the way, you know, state court had exclusive jurisdiction, and you belong there, and federal court, you shouldn't be exercising your concurrent jurisdiction. Had they done so, it appears the federal court would have very definitely said, oh, oh, okay, because that's what it did eventually. It dismissed, and then it changed, and then the court changed its mind. And interestingly, Your Honor, neither the Sefcovic plaintiffs nor TEP saw fit to advise the court of the jurisdictional facts. What about abstention? There's at least a door there for you. Yes, Your Honor. So can you address that and what you think the standard is and why you should prevail on that basis? Yes. Under the Younger abstention doctrine, Your Honor, we believe that there is a good basis for the courts to abstain in this case. But a good basis doesn't get a reversal. Tell us more. Why are we reversing on abstention? The standards under Younger v. Harris, of course, are ongoing state proceedings. The Lindauer case was never dismissed. Well, no, the standards under Younger, it's got to be a state criminal proceeding, a civil enforcement proceeding, or civil proceedings involving certain orders that are uniquely in furtherance of the state court's ability to perform their judicial function. Which one are you arguing? I'm going to argue number three, Your Honor. Okay. We believe that this is a, that the Lindauer case did involve a civil proceeding involving an order uniquely in furtherance of the state court's ability to perform its judicial function. And that is why the Lindauers filed a motion to enforce in the Lindauer case in Garfield County invoking the content procedure under Colorado law to enforce the judgment and ask the court to enforce the judgment against TEP. But they really weren't, I'm sorry, they really weren't seeking sanctions. It really wasn't a typical content procedure. They were really seeking enforcement of the settlement agreement, which isn't unique to, I mean, uniquely in state court interests. Well, it is in Colorado. Content proceeding, yes. Yes, Your Honor. Under Colorado law, it is appropriate for the court to entertain this as a motion for contempt against the court's judgment. Again, because this settlement was embodied in a judgment. And I would like to reserve the remainder of my time for rebuttal if possible. Let me just ask you, did the federal court do anything to enjoin the state court from proceeding with that motion? No, it did not. But it exercised jurisdiction over the subject matter and entered an order that amended, effectively amended the Lindauer settlement agreement. And we will give you another 30 seconds on rebuttal when the time comes as well as counsel. Thank you, Your Honor. 30 seconds. Good morning, Your Honors. May it please the court. My name is Chris Christman. I am the attorney for the defendant below and one of the appellees, TEP Rocky Mountain. Given the alignment of our interests with the Sefcovic class plaintiffs, I'm going to argue on behalf of both parties, both appellees here this morning. Mr. Barton, who represents the Sefcovic class, is going to argue on behalf of both of the appellees on the second appeal relating to the fairness of the settlement. Your Honors, we agree that the central question in this case is whether or not the district court properly exercised its jurisdiction under the Class Action Fairness Act over a class action alleging breach of contract when all of the jurisdictional requirements were satisfied. And the answer is yes. Magistrate Judge Hegarty did properly exercise the federal court's jurisdiction under the Class Action Fairness Act because all of those elements were satisfied. Well, certainly the court had jurisdiction, but it probably would have been helpful to the court in determining whether it should abstain if it had been informed early on about what was going on in the state court. Is it true that the court was never informed about that? We did not advise the state court of any of the retained jurisdiction in Garfield County. The federal court, you mean? I'm sorry, yes. I'm sorry. I apologize, Your Honor. We did not advise the federal court of this language because we believe it's permissive. That under the Ten Circuit's line of authority, under Colorado law, there was no exclusive jurisdiction retained in the Garfield County district court. I'm not talking about jurisdiction right now. I'm talking about comedy, abstention, due deference to what's going on in the state court. This matter proceeded before the federal court having any idea about what was going on in the state court. Shouldn't you have informed the federal court? I don't think so, Your Honor, because this was a separate class action, not brought on behalf by the Lindauers that we would then have removed, that was filed on behalf of the entire class. This was a separate class action brought by separate royalty owners. Acting on the same settlement agreement that the state court had retained jurisdiction in. I don't know why you wouldn't tell the federal court that. It really is a strange argument. Your premise seems to be the federal court doesn't need to know it, according to us, so we're just not going to tell the federal court. The federal court was pretty upset about that. I actually don't think so, Your Honor. I think in the hearing on the motion for reconsideration, he said the opposite. He said that he had no stones to throw in connection with that and said that reasonable minds could differ. I think those paraphrases are close. Could differ on whether he should have been advised? No. It should differ on whether or not the terms of the final judgment in 2009 entered by the Garfield County District Court or the 2008 settlement agreement created any kind of exclusive jurisdiction. That's a different question. You're not answering the question, but we can move past it. Clearly, you might get a sense here that the federal court sitting before you is wondering why in the world you didn't tell the federal magistrate judge and maybe that would have changed what happened below. To the extent that you say, well, it's just none of his business or something, that's not a real winning answer. Let me try one more time, Your Honor, as to really what was going on here. We have a separate cause of action that's filed in Denver District Court and the terms of subject matter jurisdiction that are being invoked in that complaint, I think it was in paragraph five of the complaint, were the original jurisdiction under the Colorado Constitution of any court of competent jurisdiction to hear a breach of contract claim. That was the jurisdiction that initially was invoked by the Sefcovic plaintiffs in this case and because they proceeded as a class action, we removed it under the Class Action Fairness Act, which provides its own independent jurisdiction here. And so we believe that the way that the plaintiff's case was pleaded from the outset provided independent jurisdiction in another court. Again, you're not addressing the issue that we're talking about, which is not disagreeing with you about the basis for jurisdiction or removal. What we're asking about is why didn't you, in the interest of the federal court knowing that there was potentially exclusive jurisdiction retained in the state court pertaining to this particular settlement agreement, let the district court know that? So it could have on sua sponte done what it eventually did and then reversed because of the timing. The answer to that is reading the case law, interpreting form selection clauses akin to the language that's in both the 2009 order and the 2008 settlement agreement, we did not read that language as conferring exclusive jurisdiction on the Garfield County District Court. And again, that may have been also the conclusion that the magistrate in the district court would have reached, but you didn't give them the opportunity in a timely fashion to even look at these issues. By the time the federal court was aware that there were these proceedings in the state court, there had already been, as Judge Morton said, it was over. But the only important reason, Judge McHugh, that the interveners ever raised this issue of jurisdiction, and this is in the transcript from the hearing on the motion for reconsideration, is because they wanted to object to the underlying settlement. It never had anything to do with any special competence that the Garfield County District Court would have in this case or any kind of unique state interest. So you're suggesting they took a wait and see approach as well, which is, all right, maybe there is, we're not going to object to federal jurisdiction as long as, or to, well, because there is jurisdiction, but we're not going to seek it at this point. I'm not sure what the, it's kind of twisted. I think that wait and see approach, which I think was the language, Judge Morris, that Judge Hegarty used in his order, is what motivated him to say that the issue of subject matter jurisdiction here, particularly from the perspective, not so much of jurisdiction, but of comity, doesn't weigh in favor of dismissal, is because no party advised the federal court of this provision. And I'm trying to articulate the reasons that the appellees, both TEP and the Sefcovic plaintiffs, didn't do it. I think the reason that's articulated in the hearing record for why the interveners didn't do it is they wanted to wait to see how the hearing, how the proceedings played out. Well, but they say they waited to see if, essentially, if it would impact them. I mean, they don't really even have an argument, arguably, until they know what that settlement is. Well, I think if their argument is... Can they intervene? Are they... I don't think so. I think they can intervene, actually, Your Honor, based on the interest that they articulated in the motion to intervene prior to the settlement agreement even being submitted to the court on a preliminary basis. Which was never granted, right? Was it? Motion to intervene? No, it was ruled upon sua sponte. Well, okay. No, I'm sorry. The jurisdictional issues were ruled upon sua sponte the first time around. Right, yeah. But they could still raise those issues. Which tells me that, regardless of whether there had been an intervention or not by these parties, the court would have liked to know this. Sua sponte, it could have considered comedy in deferring to state court jurisdiction. It certainly could have considered it if any of the parties, including the interveners, had raised it at a different stage. And it could have considered that regardless of whether the state court retained exclusive jurisdiction or not, it's clear the state court attempted to retain jurisdiction, whether it was exclusive or not is not necessarily relevant. Well, Judge Morris, we have no disagreement that the Garfield County District Court has jurisdiction. In fact, wouldn't have even needed to retain jurisdiction in the underlying orders in order to have jurisdiction over TEP on a royalty underpayment claim in this case. The question is whether or not the federal court had jurisdiction as well. And it did. And so then, if the federal court has jurisdiction, is there a principle of comedy in this case that would suggest that the federal court should have deferred? And there wasn't. And is there, I mean, it's actually, I mean, everyone, I mean, the Supreme Court has sort of told us to refer to it as abstention. And if you don't fall into one of the recognized abstention doctrines, there is no vague comedy that lets a federal court not hear a case. Would you agree with that? I absolutely agree with that, Your Honor. Okay. So they're arguing, as I see, the only thing that your opponents are arguing is younger abstention. And apparently, under prong three, they're saying that by going forward with the federal action, that it interfered with the state court's ability to control its own proceedings. How do you respond to that? Your Honor, our response is there was no interference with the state court proceeding. The Sefcovic case was a breach of contract action. And at the time it was filed, there was no enforcement or other, any kind of other action pending in the Garfield County District Court. Doesn't mean that the case, we understand that the Court of Appeals ruled in Encana that the case hasn't gone away. But there was no action akin to what the Sefcovic plaintiffs had filed that was pending in Garfield County. That action wasn't filed until over a year later in September of 2017 or I'm sorry, 2018. That's when that action was initially filed. And so there's two reasons under those circumstances that younger doesn't apply judgment queue. The first reason is there was no interference with the state court action. The state court was asked to proceed on the basis of contempt to enforce its order and could still have The Supreme Court recognized an exception to younger, even if a case does fit those narrow categories. And that exception is when the federal court case has proceeded past an embryonic stage. And here we had a year of litigation where the parties exchanged extensive discovery, engaged experts, negotiated a comprehensive settlement agreement and presented that for the court to offer its preliminary approval and to provisionally certify a class and appoint class counsel. All of those things proceeded past that embryonic stage that the court in its opinion referenced in connection with younger, such that even if this court were to believe that this action or the Lindauer action arguably falls within prong three or category three of the younger cases that the Supreme Court recognized in Sprint, the exception still applies here. If I might just address briefly this argument of ancillary jurisdiction. When it comes to the question of ancillary jurisdiction, as we point out in our briefs, we really think that gets the Kokoning case backwards. That is jurisdiction that is asserted when a court would not have otherwise have independent jurisdiction. Here, we don't have that because the Sefcovic plaintiffs were never seeking to enforce a court order or invoke the Garfield County District Court's powers. They filed a claim for breach of contract, a claim that has independent subject matter jurisdiction under the Colorado Constitution and then when was brought on appeal, has independent jurisdiction under the Class Action Fairness Act. And so in examining their first amended complaint and their second amended complaint, you'll see that the Sefcovic plaintiffs are asserting jurisdiction under the Class Action Fairness Act. Enforcement of a state court's action doesn't fall into this. And so again, we don't disagree that the Garfield County District Court has jurisdiction over certain claims. It just didn't have exclusive jurisdiction to hear these claims in this case. Does it matter? I'm not following your argument in your brief. You spent a lot of time talking about the fact that it didn't have exclusive jurisdiction. Does it really matter if it did or didn't? I think it does, Your Honor. And why? Under federal law and under, well, I guess it depends on what analysis we're going under. If we're going under the analysis of the Flanagan cases and that line of authority that the plaintiffs rely upon, I think it does matter that there was an intent to. Flanagan's the opposite thing, right? Flanagan is whether a federal court can, whether the state could enjoin a state court from proceeding. Absolutely. I mean, of course that can't happen. So it was decided under the Anti-Injunction Act. It was an interpretation of the Anti-Injunction Act, right? That's correct, Your Honor. So it doesn't, I mean, it doesn't suggest in any way that a state court has the ability to restrict federal jurisdiction, does it? Not in the least, Your Honor. That would violate the Supremacy Clause. But there are, and I use Flanagan only as a shorthand because there are cases relied upon by the Lindauers where federal courts are deferring to a state court action that has retained jurisdiction. Under what principle? Comedy. That's what I thought. Under comedy principles. Which is what the district court. Formed on convenience, some of them, right? I think that's the procedural vehicle that is preferred by the federal courts to use that. But the analysis is really a comedy analysis. It is. As the court pointed out here, there's really no... In those cases, they recognize they have discretion. Absolutely. And that's basically what the district court said here is even though they, he found that the state court had exclusive jurisdiction, nevertheless, in light of where this case is at the very end of the litigation and everything that's occurred and transpired, I'm not going to defer under these general comedy principles if that's what, and that is what he said. And I think, just to unpack a couple of things on that, Your Honor, I think those general comedy principles, Magistrate Judge Hegarty tried to wrap into the Colorado River Doctrine at the beginning of his order. Yes. Which is an abstention. Yes. Which is abstention. But I think, but it's certainly looser than younger. And most importantly... And nobody's arguing Colorado River Doctrine. No, I agree. They have not argued Colorado River abstention. So those comedy principles, we view, have been decided. And in any event, they're reviewed by this court on abuse of discretion anyway. So do you think they're not relevant at all then? I guess I'm still trying to figure out why you spent a lot of your brief talking about whether the jurisdiction was exclusive or non-exclusive. We only raise that issue, Your Honor, because it's fundamentally important to the Lindauer's case to read the language in the Lindauer settlement and the court's 2009 order as inferring exclusive jurisdiction. And we believe that under this court's precedents, which are mirrored by Colorado law, by the way, in the one case that is cited in the reply brief, Vanderbeek, the language has to be clear. And in the absence of clear language, the jurisdiction's not exclusive. So we would ask you to infer. Thank you, Your Honor. Your Honor, very briefly, we believe that the court should have been apprised of the county when the settlement was presented to the magistrate judge so that he could consider it as part of a proper Rule 23 analysis. Second, delay is not a factor under any of the comedy cases that have been cited in any of the briefs in this case. That was an invention by this magistrate judge, as was his conclusion that the duration of the Lindauer settlement agreement, because it would extend for the Peons Basin field, would somehow make comedy inappropriate. There is also no case saying that waiver can occur with respect to comedy. In fact, this court has ruled that comedy-related principles cannot be waived by the parties. In addition, Your Honor, the district court had no substantive involvement in this case until the settlement was presented. All the district court did was the magistrate judge entered a scheduling order, and then he modified the scheduling order to extend the discovery period. All the discovery was done informally. There were no depositions. There were no interrogatories. There were no requests for production and no requests for admission. It was all done informally. And then they informally went in and presented the settlement to this judge, and he primarily approved it. And then when our clients got notice, we recognized the client's interest, and we promptly came into this court and attempted to intervene and attempted to raise the jurisdictional issues. We filed a motion to dismiss in connection with our motion to intervene. And for some reason, Your time has expired. I'm sorry, Your Honor. For all these reasons, Your Honor, we would ask the court to reverse and vacate the judgment of the district court and to remand with instructions to dismiss this case. Thank you. All right. Thank you both for your arguments, and that case is submitted. Next